AEJAL RAYHN et al., Appellants, v MARTIN NEMER VOLKS-
WAGEN CORP., Respondent, et al., Defendants.

Third Department, December 11, 1980

APPEARANCES OF COUNSEL

*Robert S. Bernard (John F. Maxwell* and *Richard A. Liese* of counsel), for appellants.

*Carter, Conboy, Bardwell, Case & Blackmore (Jeffrey J. Tymann* and *Dennis A. First* of counsel), for respondent.

OPINION OF THE COURT

HERLIHY, J.

On or about January 18, 1979, the defendant Martin Nemer Volkswagen Corp. (hereinafter referred to as Nemer) entered into a contract with the plaintiffs whereby Nemer sold a certain automobile to Nancy Rayhn and entered into a retail installment sales contract with both plaintiffs. The installment contract was assigned to the defendant Manufacturers Hanover Trust Company/Capital Region (hereinafter referred to as Bank).

The plaintiffs took delivery of the automobile on January

20, 1979, at which time a written warranty was issued and expressly accepted by Nancy Rayhn. Also, on the same day, a certificate required by section 417 of the Vehicle and Traffic Law was delivered to Nancy Rayhn.

It is undisputed that, upon receipt of possession of the automobile, the plaintiffs experienced difficulty in manipulating the vehicle's transmission and it actually became stiff and locked in gear. A litany of the vehicle's problems is set forth in the papers as follows:

(1) major clutch and transmission repair in which the clutch, master cylinder and slave cylinder were repaired and replaced,

(2) new thermostat installed,

(3) defective alternator replaced and repaired,

(4) bent alternator pulley repaired and replaced,

(5) new left door lock cylinder installed,

(6) trunk lock adjusted,

(7) defective brake pads removed and replaced,

(8) engine retuned,

(9) right front wheel rim repaired,

(10) front end lubed and shock absorbers checked,

(11) brake fluid added,

(12) emergency brake checked and adjusted,

(13) all locks lubricated.

The plaintiffs redelivered the vehicle to Nemer for repair for the last time on February 7, 1979 and it took about one month for such repairs to be completed. On February 21, 1979, plaintiffs' counsel advised Nemer that the plaintiffs were rescinding the contract. The vehicle has remained in the possession of Nemer and it has counterclaimed for storage fees at the rate of $5 per day.

The plaintiffs commenced this action seeking a cancellation of the contract and a return of their down payments as well as money damages as compensation for the loss of use of the vehicle. The plaintiffs moved for summary judgment and Special Term denied relief because in its opinion there were triable issues of fact presented.

The affidavits and documentary evidence herein establish that the automobile was not in compliance with section 417 of the Vehicle and Traffic Law. In pertinent part, sec-

tion 417 required Nemer to provide Nancy Rayhn with a certificate as follows: "Such notice shall also contain a certification that said motor vehicle complies with such requirements of this chapter as shall be specified by the commissioner and that it is in condition and repair to render, under normal use, satisfactory and adequate service upon the public highway at the time of delivery."*

In *Pierce v International Harvester Co.* (61 AD2d 255, 260), the Appellate Division, Fourth Department, considered the legislative history of section 417 and concluded that the statute "was specifically designed to protect, as a class, purchasers of used motor vehicles". For purposes of the liability of a used vehicle dealer to a purchaser for personal injuries, it was held (pp 260-261) that, upon violation of the statute, liability was absolute if there exists proximate cause.

The analysis of legislative intent in the *Pierce* case *(supra)* is thorough and a plain reading of section 417 supports the conclusion that the Legislature intended to impose an absolute responsibility upon the used vehicle dealers in this State to sell only motor vehicles in condition to render adequate and satisfactory service upon highways at the time of delivery. The statute does not provide for any contractual waiver or limitation upon the responsibility for a satisfactory operating condition. This vehicle, as was the situation in the *Pierce* case, not only failed as a matter of fact to be in the required condition, it had such defective safety equipment (brakes) as to establish a lack of an appropriate inspection to determine if the certificate was accurate as to this item *required* to be inspected pursuant to section 78.13 of the regulations of the Commissioner of Motor Vehicles (15 NYCRR 78.13). A failure to conduct an appropriate inspection is an express violation of section 417 of the Vehicle and Traffic Law. The section provides that "delivery of a *false* certificate shall raise presumption that such certificate was issued without an appropriate inspection." (Emphasis added.)

---

* In support of the enactment of the section, it was stated: "This measure is primarily designed to protect the purchasers from being sold an improperly equipped or defective vehicle." (See NY Legis Ann, 1954, pp 263-264.)

Nemer has offered no direct evidence that an "appropriate" inspection was conducted. The record does contain copies of some documents attached to an interrogatory that indicate a "16 point inspection" and/or a New York State inspection, however, there is nothing to attest that an "appropriate" inspection was conducted as required by section 417 or 15 NYCRR 78.13. The plaintiffs' proof of a violation of section 417 is complete for purposes of summary judgment. There are no issues of fact requiring trial.

The contract was not thereby rendered void since there was no illegality on the part of the purchasers and the obligation of the statute would protect purchasers from losses proximately caused by a violation of section 417 *(Maure v Fordham Motor Sales,* 98 Misc 2d 979, 984; *Natale v Martin Volkswagen,* 92 Misc 2d 1046). The sale of the used vehicle to plaintiffs was not prohibited by law (cf. *Carmine v Murphy,* 285 NY 413), but the *delivery* of such vehicle without first making an appropriate inspection and making the vehicle comply with section 417 *is* implicitly prohibited. The illegality of Nemer's performance of the contract does not affect the rights of the plaintiffs. (See *Bolivar v Monnat,* 232 App Div 33, 38-40.) To require the plaintiffs to accept the performance of the contract by Nemer would violate the public policy as found in section 417 and would lend judicial encouragement to putting dangerous vehicles upon the highway.

The plaintiffs, upon surrender of the automobile, as has already occurred herein, are entitled to a complete refund of the purchase price. The fact that it is alleged that the vehicle is *now* in compliance with section 417 of the Vehicle and Traffic Law is immaterial in the absence of an acceptance of such vehicle by the plaintiffs. However, having elected to rescind the contract, the plaintiffs may not also seek damages for loss of use of the vehicle. As part of rescission, the plaintiffs must execute such documents as are necessary to restore title to the motor vehicle to Nemer as may be directed by the court upon remittal.

As to the Bank, the installment contract signed by the plaintiffs expressly states that holders are subject to any defense or claim that could be asserted against Nemer. The

contract expressly provides: "Both the Seller [Nemer] and Bank are joint creditors under this contract." Accordingly, the Bank is subject to the same obligation to refund to plaintiffs any and all moneys received in this transaction from the plaintiffs or on their behalf. We note that it appears there was probably no such money received by the Bank.

The order should be modified, on the law, by reversing so much thereof as denied the plaintiffs' motion for an order striking the answer of the defendants and for summary judgment; the plaintiffs' motion should be granted to the extent of striking the counterclaim of Martin Nemer Volkswagen Corp. and Manufacturers Hanover Trust Company/Capital Region against the plaintiffs and granting plaintiffs' motion for summary judgment against the defendants canceling the contract dated January 18, 1979, and, as so modified, affirmed, with costs; matter remitted for further proceedings not inconsistent herewith.

MAHONEY, P. J., GREENBLOTT, SWEENEY and KANE, JJ., concur.

Order modified, on the law, by reversing so much thereof as denied the plaintiffs' motion for an order striking the answer of the defendants and for summary judgment; plaintiffs' motion granted to the extent of striking the counterclaim of Martin Nemer Volkswagen Corp. and Manufacturers Hanover Trust Company/Capital Region against the plaintiffs and granting plaintiffs' motion for summary judgment against the defendants canceling the contract dated January 18, 1979, and, as so modified, affirmed, with costs; matter remitted for further proceedings not inconsistent herewith.